**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darren Udd,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>City of Phoenix,<br><br>　　　　　Defendant. | No. CV-18-01868-PHX-JJT<br><br>**ORDER** |

At issue is Plaintiff Darren Udd's Motion for Conditional Certification and Notice of Lawsuit (Doc. 36, Mot.), to which Defendant City of Phoenix filed a Response (Doc. 47, Resp.) and Plaintiff filed a Reply (Doc. 51, Reply). In this Order, the Court will also resolve the parties' discovery-related motions: Defendant's Motion to Exclude Evidence and Legal Theories which Plaintiff Concealed and Untimely Disclosed; Request for Sanctions (Doc. 37), and Plaintiff's Motion to Exclude Defendant's Untimely Disclosures (Doc. 50). The Court will resolve all of these matters without oral argument. *See* LRCiv 7.2(f).

**I.　BACKGROUND**

Plaintiff worked as a police officer for Defendant's Police Department, and he became a homicide detective in the Homicide Unit of the Violent Crimes Bureau in 2008, where he worked until his retirement on December 15, 2017. (Doc. 36-1 at 3–8, Udd Decl. at 1.) He alleges that Defendant did not compensate him for working off-the-clock overtime hours as a homicide detective, even though Defendant knew or should have known he was performing that work. In this lawsuit, Plaintiff, on behalf of a putative class of similarly-

1 situated homicide detectives, brings a claim against Defendant for failure to properly pay overtime wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b). (Doc. 1, Compl.) Plaintiff now moves for an Order conditionally certifying the class and requiring Defendant to produce contact information for similarly-situated homicide detectives so that Plaintiff can send out a notice of this lawsuit to potential class members.

## II.  LEGAL STANDARDS

Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981). Among the FLSA's central provisions is its requirement that employers pay non-exempt workers at one and a half times the regular rate for any time worked in excess of forty hours in a single week. 29 U.S.C. § 207; *see Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1042 (2016).

The FLSA provides a mechanism—the "collective action"—through which workers can sue jointly for violations of its overtime compensation and other provisions. *See* 29 U.S.C. § 216(b). The collective action allows a representative plaintiff to bring suit on behalf of a group of workers who are "similarly situated," *see id.*, and thereby serves to (1) reduce the burden on plaintiffs through the pooling of resources, and (2) make efficient use of judicial resources by resolving common issues of law and fact together. *See Hoffman-La Rouche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

The decision to certify a collective action under the FLSA is within the discretion of the Court. *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010). To certify a collective action under the FLSA, the Court must determine whether the named plaintiff and potential opt-in members are "similarly situated." 29 U.S.C. § 216(b). The FLSA does not define the term "similarly situated," and the Ninth Circuit Court of Appeals has not construed the term. *Colson*, 687 F. Supp. 2d at 925.

The majority of courts, including this one, have adopted a two-tiered approach to class certification. *Id*. First, and at issue here, is the "notice stage," during which courts determine based on pleadings and affidavits whether a collective action should be certified

on a conditional basis. *Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002); *see also Baughman v. Roadrunner Commc'ns LLC*, No. CV 12-565-PHX-SRB, 2012 WL 12937133 at *3 (D. Ariz. Sept. 27, 2012).

Conditional certification at this first stage requires the plaintiff to make "substantial allegations that the putative class members [are] subject to a single illegal policy, plan, or decision." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). Because of the minimal evidence available to the Court at the pleading stage, the initial determination to certify is "based on a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Wynn*, 234 F. Supp. 2d at 1082. The evidence must only show that there is some "factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice." *Colson*, 687 F. Supp. 2d at 926. But while the plaintiff's burden is light, conditional certification at this first stage is not automatic. *Id.* at 925. If the plaintiff meets its burden and the Court grants conditional certification, a court-approved written notice is sent to employees, who in turn become parties to a collective action only by filing written consent with the court. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).

At the second stage, after discovery and often precipitated by a motion for decertification by the defendant, the court reevaluates whether the claimants who have consented to sue are indeed "similarly situated." *Wynn*, 234 F. Supp. 2d at 1082. This analysis, which is based on much more information, is subject to a stricter standard. *Id.*

### III. ANALYSIS
#### A. Conditional Certification
##### 1. Similarly Situated Potential Plaintiffs

To demonstrate that he is entitled to conditional class certification, Plaintiff first provides his own declaration, in which he avers that he and other homicide detectives worked numerous off-the-clock overtime hours and Defendant's policies did not provide for paying overtime hours when a homicide detective's status was off duty, even though Defendant knew homicide detectives were working off-the-clock. (Udd Decl. at 4–6.) Plaintiff includes statements from his supervisor, Sergeant Lumley, that indicate that Plaintiff worked "countless hours, off duty, at home." (Udd Decl. at 2.) Plaintiff also avers that the homicide detectives were under a heavy workload and had no choice but to work off-the-clock to fulfill their duties. (Udd Decl. at 5.)

Plaintiff also supports his Motion with the declarations of two other homicide detectives working for Defendant who were subject to the same policy or practice regarding off-the-clock overtime pay as Plaintiff. (Doc. 36-1 at 10–13, Roe Decl.; Doc. 36-1 at 26–28, Ruggeri Decl.) Those homicide detectives make similar statements regarding the heavy workload under which they worked. (Roe Decl. at 2–3; Ruggeri Decl. at 2–3.) Plaintiff's spouse also prepared a declaration in which she avers that she observed Plaintiff working for extended periods of time at home in the evenings, on weekends, on holidays, and on sick days and other days off. (Doc. 36-1 at 45, Amy Udd Decl. at 1.) In addition, Plaintiff provides with his Motion selected portions of Defendant's policy documents, including those related to overtime pay. (Mot. Ex. 5.)

In response, Defendant provides ten declarations of other detectives to argue that detectives' work practices vary greatly and Plaintiff cannot demonstrate a "homicide-wide policy to deny overtime." (Resp. at 15-17, Exs. 1–10.) As Plaintiff points out in his Reply, four of these declarants do not aver they worked as homicide detectives, and two declarants appear to have worked as homicide detectives outside the potential class period.[1] (Reply at

---

[1] Under the FLSA, an employee may bring an action on behalf of himself and other employees similarly situated within two years of when the action accrued or, in the case of a willful violation, within three years. 29 U.S.C. § 216(b). Persons wishing to join an FLSA collective action must affirmatively opt in to the suit by filing a notice of consent. Under the statute, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* For each plaintiff who opts in to the case after the filing of the complaint, the action is not considered commenced for purposes of the statute of limitations

- 4 -

3–4.) Plaintiff argues that three of the remaining four detectives do aver that they worked without compensation during off-the-clock time, albeit of their own choice and without informing supervisors. (Reply at 4; *see* Resp. Ex. 3 ¶ 14, Ex. 4 ¶ 16, Ex. 10 ¶ 15.)

The declarations Defendant submitted do not convince the Court that Plaintiff has not met his burden at this first stage to show a factual nexus binding Plaintiff with other homicide detectives as potential class members subject to Defendant's alleged policy or practice of not paying for off-the-clock overtime hours worked. *See Colson*, 687 F. Supp. 2d at 926. Plaintiff submitted his own declaration and two declarations of other homicide detectives who by their statements are similarly situated potential class members, and even Defendant's declarants—to the extent they would fall within Plaintiff's proposed class— indicate a factual nexus with Plaintiff by stating they worked off-the-clock overtime hours without compensation under Defendant's policies.[2] The Court will therefore grant Plaintiff's request for conditional class certification. *See Leuthold*, 224 F.R.D. at 462–63 (certifying a proposed class based on affidavits from three plaintiffs).

### 2. Notice

In response to Plaintiff's proposed Notice of Overtime Lawsuit (Mot. Ex. 13), Defendant makes several objections. First, Defendant proposes that it or a third-party administrator—but not Plaintiff—send out the Notice to protect potential class members' privacy by not requiring Defendant to give Plaintiff the potential class members' names and addresses. (Mot. at 17.) Defendant argues that this is important in this instance given that the potential class members are or were homicide detectives. Plaintiff "vigorously objects," considering that Defendant will only be disclosing the potential class members' contact information to Plaintiff, and Defendant has made no showing that such disclosure puts the potential class members at risk. (Reply at 9–10.) The Court agrees with Plaintiff that the case law cited by Defendant, *U.S. Department of Defense v. Federal Labor*

---

until the date on which the plaintiff's written consent is filed with the court. 29 U.S.C. § 256; *see also* 29 U.S.C. § 255(a).

[2] The Court also notes that since the time Plaintiff filed his Motion, two individuals have filed consent to join forms with the Court to join this action as opt-in Plaintiffs.

*Relations Authority*, 510 U.S 487, 501 (1994), does not support the proposition that potential class members' contact information must be kept confidential from Plaintiff in the present case. There, the Court sought to protect the contact information of non-union members from a union, and no similar concerns exist here. The Court also agrees with Plaintiff that a third-party administrator is not necessary in this instance, where the universe of potential class members is relatively small. Accordingly, Defendant must provide to Plaintiff the full name, last known address and last known e-mail address of all putative class members—that is, current and former homicide detectives who have worked for the Phoenix Police Department at any time during the last three years.

Next, Defendant requests that Plaintiff's proposed 60-day opt-in period be reduced to 45 days, citing for support a case from the Southern District of Ohio. This Court has often approved a 90-day opt-in period in instances similar to this one, and in any event does not find 60 days as proposed by Plaintiff to be excessive. *Cf. Williams v. U.S. Bank Nat. Ass'n*, 290 F.R.D. 600, 614 (E.D. Cal. 2013) (rejecting conclusory proposal of a 60-day, rather than 90-day, opt-in period where Defendant offered no "independent reason the period should be reduced from 90 to 60 days," other than that "some courts in this Circuit have approved 60 days, and others have approved 90 days"). The opt-in period will be 60 days.

Defendant next proposes edits to Plaintiff's proposed Notice. (Resp. Ex. 16.) The Court disagrees with the first, namely, that the potential class only consist of homicide detectives who performed off-the-clock work *at home*. Plaintiff has defined the potential class as any homicide detective who has a claim for unpaid overtime wages, and the Court rejects Defendant's edits limiting the potential class beyond Plaintiff's proposed definition.

Defendant next proposes informing potential collective action members that they may be responsible for attorneys' fees and costs should Defendant prevail. Citing cases from other District Courts, Plaintiff argues that would chill participation. However, cases in this District appear in accord that such information is necessary to fully inform opt-in members of their rights and potential risks in joining the lawsuit. *Schiller v. Rite of*

*Passage, Inc.*, No. 2:13-CV-0576-HRH, 2014 WL 644565 at *6 (D. Ariz. Feb. 19, 2014) ("[P]otential class members should be made aware of the possibility of having to pay defendant's attorney's fees if plaintiffs do not prevail."); *Barrera US Airways Grp., Inc.*, No. CV-2012-02278-PHX, 2013 WL 4654567, at *9 (D. Ariz. Aug. 30, 2013). This is true even though FLSA defendants may only be awarded attorney fees in certain situations. *Schiller*, 2014 WL 644565 at *6. Thus, Plaintiff shall add a portion of Defendant's proposed language in section 4 of the Notice, beginning with deleting "will not owe any attorneys' fees," and adding "you may be required to share in liability for payment of attorneys' fees and costs. If you chose to join the lawsuit, you and the City will be bound by any ruling, judgment, or settlement, whether favorable or unfavorable." (*See* Resp. Ex. 16.)

Defendant also proposes to add the name and contact information for defense counsel. Cases within this District exist holding that granting the plaintiff's counsel exclusive access to potential collective action members could provide them "an avenue to mislead potential collective action members in an attempt to secure their consent to join the lawsuit." *Bados Madrid v. Peak Constr., Inc.*, No. 2:09-CV-00311 WJS, 2009 WL 2983193, at *3 (D. Ariz. Sept. 17, 2009). Further, nothing precludes pre-opt-in communication with a potential FLSA § 216(b) plaintiff, "unless the communication undermines or contradicts the Court's notice." *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1085 (C.D. Cal. 2002). "If an undermining or contradictory communication is sent, the Court can control the proceedings through sanctions, requiring payment for a curative notice, regulation of future *ex parte* communications, or other appropriate orders." *Id.* Accordingly, the Court will require defense counsel's contact information to be included in section 4 of the Notice as requested by Defendant (*see* Resp. Ex. 16), subject to the foregoing admonition precluding all communication proscribed by applicable law.

Defendant provides no legal support for any of the other changes it proposes to the Notice (Resp. at 18 & Ex. 16), and Plaintiff does not stipulate to them, so the Court rejects the balance of proposed changes and will not require Plaintiff to make those edits. The

Court mentions in particular a provision proposed by Defendant that Plaintiff vigorously objects to: "The law firm of Jackson White will typically keep 30% to 35% of any recovery for itself." This provision presents myriad issues, and because Defendant does not substantiate its addition, Plaintiff shall not add it.

In sum, Defendant shall provide the required contact information to Plaintiff for Plaintiff to send the Notice to potential class members. The opt-in period shall be 60 days. Plaintiff shall add Defendant's proposed provisions notifying putative class members of potential liability for attorneys' fees and costs and identifying defense counsel, but need not make any further edits to the Notice.

### B.     Discovery Motions

Around the same time as their briefing on Plaintiff's Motion for Conditional Certification, each side filed a motion to exclude the other side's allegedly late-disclosed information under Federal Rule of Civil Procedure 37. At the outset, the Court must point out that it does not ordinarily consider such motions in this format. In the Case Management Conference, the Court discussed how it handles discovery disputes, saying that it was the Court's goal to resolve them "as quickly and cheaply as possible." Thus, the Court said that if the parties could not resolve a discovery dispute through meet and confer, the Court did not want "a round of briefing," but instead asked the parties to "simply file a document that is captioned Joint Notice of Discovery Dispute" in which each party gives the Court "a paragraph on [its] position, which [the Court] will the flesh out when we're on the phone" in a telephonic conference to be set within a couple of days of the parties' filing of the Joint Notice. (Case Management Conference, Oct. 1, 2018 Tr. at 5.)

Nevertheless, Defendant filed a 16-page Motion with 216 pages of exhibits to say that Plaintiff acted in bad faith by not timely providing a calculation of damages that included his precise off-the-clock overtime hours and a written policy on overtime pay—which policy Plaintiff argues Defendant already possessed and had cited. (Docs. 37, 40.) Not to be outdone, Plaintiff filed a 7-page brief with 44 pages of exhibits to tell the Court that Defendant acted in bad faith by not timely disclosing the ten declarants Defendant

cited in its Response to Plaintiff's Motion for Conditional Certification. Total briefing on the two discovery motions consisted of 67 pages of argument and 492 pages of exhibits—figures the Court only mentions as a measure of time and cost.

This is precisely what the Court endeavors to avoid. It is, as the Court said at the Case Management Conference, "an anathema to Rule 1," which provides that the Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

In its discovery motion, Defendant states in a footnote that its counsel "personally contacted Chambers to seek guidance on the proper method of bringing the issues set forth in the present Motion to the Court's attention" and "was advised to file a motion." (Doc. 37 at 2 n.2.) No record of this call or the question posed to Chambers exists, which is one of the principal problems with seeking direction from the Court over the phone (and presumably *ex parte*). The Court had laid out its expectations in the event of a discovery dispute between the parties at the Case Management Conference, which of course counsel of record for both sides attended. The Court is cognizant that it did not issue its ordinary Scheduling Order after the Case Management Conference because the Court agreed with Defendant to set deadlines only for the first phase of this litigation. Nevertheless, substantial time and cost could have been saved had the parties followed the Court's direction in the Case Management Conference.

The Court will neither exclude the allegedly late-disclosed evidence of each side nor sanction either party. Neither side was seriously prejudiced by the other. The discovery process in an FLSA collective action such as this one is confounded by the fact that the litigation proceeds in several related stages and the first phase has certain discovery deadlines. The Court had what was required to decide Plaintiff's Motion for Conditional Certification—the early and first stage of the litigation. The Court will now schedule a second case management conference, in which new deadlines for discovery will be set.

Each side will have ample time to conduct discovery on the information it believes the other side disclosed late in the first phase.

In the first Case Management Conference, Defendant's counsel stated, "[Plaintiff's counsel] and I have had a lot of cases together. I believe we tend to work well[—]even when he and I have discovery disputes[—]we tend to work well together. I think he would agree." (Oct. 1, 2018 Tr. at 4.) Thus far, this has turned out to be untrue, and going forward the Court again encourages both sides to make every reasonable effort to resolve discovery disputes between themselves, keeping in mind the context of the entire case.

**IT IS THEREFORE ORDERED** granting Plaintiff's Motion for Conditional Certification and Notice of Lawsuit (Doc. 36) with the following caveats: Within 14 days of the date of this Order, Defendant shall provide the required contact information to Plaintiff for Plaintiff to send the Notice to potential class members. The opt-in period shall be 60 days. Plaintiff shall add Defendant's proposed provisions notifying putative class members of potential liability for attorneys' fees and costs and identifying defense counsel, but need not make any further edits to the Notice.

**IT IS FURTHER ORDERED** denying Defendant's Motion to Exclude Evidence and Legal Theories which Plaintiff Concealed and Untimely Disclosed; Request for Sanctions (Doc. 37).

**IT IS FURTHER ORDERED** denying Plaintiff's Motion to Exclude Defendant's Untimely Disclosures (Doc. 50).

**IT IS FURTHER ORDERED** that the Court will set a Case Management Conference for the second phase of this litigation by separate Order.

Dated this 23rd day of March, 2020.

Honorable John J. Tuchi
United States District Judge